SEALED

FILED _____ LODGED
RECEIVED _____ COPY

DEC 0 1 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>               Plaintiff,<br><br>    v.<br><br>Miko Dion Wady<br><br>               Defendant. | NO. CR 09-1485-PHX-JAT (LOA)<br><br>**INDICTMENT**<br><br>VIO:  18 U.S.C. §§ 1343 and 2<br>        (Wire Fraud)<br>        Counts 1-20<br><br>        18 U.S.C. §§ 1957(a) and 2<br>        (Transactional Money<br>        Laundering)<br>        Counts 21-37<br><br>        18 U.S.C. §§ 982 (a) and (b)<br>        (Criminal Forfeiture) |

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times material to this Indictment:

    1.    Defendant MIKO DION WADY ("WADY") resided in Chandler, Arizona. Defendant WADY operated and had an ownership interest in various business enterprises that purportedly were engaged in the business of promoting concerts or tours of well known entertainers and artists. The enterprises included Dezert Heat Entertainment, Inc.; Dezert Heat, Inc.; Dezert Heat Worldwide, LLC; NATO Enterprises, LLC; and NATO Entertainment, LLC.

2.     Defendant WADY, and others, misled victim investors into believing that WADY entered into performance contracts and other business arrangements with nationally and internationally known entertainers, arranged performance venues throughout the world, and greatly profited by putting on these concert or tour events.  Defendant Wady falsely claimed during the period 2004 through 2007 to have promoted concerts for The Rolling Stones, U2, Barbara Streisand, Faith Hill, Tim McGraw, Mariah Carey, George Strait, Billy Joel, Jamie Foxx, Jimmy Buffet, Mary J. Blige, Pearl Jam, and at least thirty (30) other well known artists and entertainers. In reality, during this period, defendant WADY appears to have actually promoted fewer than ten (10) concerts, all involving only local or lesser known artists.

3.     TransCapital, LLC ("TransCapital"), an Arizona Limited Liability Company located in Mesa, Arizona, was operated by James Cundiff and his two sons, Adam and Jeremiah Cundiff ("Cundiffs"). TransCapital was established solely to secure "investment" financing for the concerts and tours purportedly being promoted by defendant WADY.

4.     Dezert Heat Worldwide, LLC ("Worldwide") was a joint venture among the Cundiffs and defendant WADY, and was operating by on or about September 2006 to eventually replace TransCapital. Worldwide operated in the same basic manner as TransCapital, which was to obtain victim investor funds to finance purported concerts and tours supposedly being promoted by defendant WADY.

## FRAUD SCHEME

5.     From at least on or about August 2004, through on or about March 2007, the Cundiffs, through TransCapital or Worldwide, entered into loan and event funding agreements with more than 250 victim investors, and obtained no less than fifty million dollars ($50,000,000.00) to finance approximately 150 concerts or concert tours purportedly being promoted by defendant WADY. The "investment" loan agreements victim investors entered into with the Cundiffs, through TransCapital or Worldwide, specified that each "investment" loan was for the financing of a particular concert or tour of a designated performer.  The "investment" loan terms called for repayment to the victim investors within 30 days after receipt

2

by TransCapital of the net concert proceeds for the designated concert or tour. Victim investors were typically promised interest rates of 4% per month for the first two months, and 2.5% per month thereafter until the investment loans were repaid. The "investment" event funding and subscription agreements that victim investors entered into with the Cundiffs, through Worldwide, specified that each "investment" was for the promotion of events at the discretion of Worldwide. The "investment" event funding terms called for payment of interest to the victim investors within 30 days after receipt by Worldwide of the net concert proceeds for the promoted event. Victim investors were typically promised interest rates of 4% per month for a maximum of 6 months or 24% for one promoted event.

6.    The Cundiffs, through TransCapital or Worldwide, upon receipt of victim investor funds, transferred the funds to defendant WADY for the purported financing of concert or tour events. Because defendant WADY had no association or contractual arrangement with any of the concerts or tours, the investor funds given to defendant WADY from the Cundiffs were not used as represented to the victim investors. Most of the funds were instead returned by defendant WADY to the Cundiffs within a short period of time, typically one or two days, under the guise that these repayments represented the net proceeds from some other concert or tour that was recently completed. In essence, because no actual investments were used for the represented concerts or tours, new victim investor monies were simply used to repay old victim investors. From beginning to end, this was a *Ponzi* scheme.

7.    From these purported net concert proceeds, which were in reality new funds recently obtained from another victim investor pool for another purported concert or tour, the Cundiffs determined which previous victim investors should be repaid their original investment, with interest. Generally, the Cundiffs favored those victim investors who were most likely to re-invest their purported earnings in another fictitious concert or tour arrangement. In many cases, as the *Ponzi* funds were being shifted between bank accounts, the Cundiffs and defendant WADY took the fictional concert proceeds for themselves prior to repaying all of the victim investors for a particular concert or tour, contrary to the terms of the agreements with victim investors.

8.     Throughout the later part of 2006 and into 2007, new victim investor funds were solicited by the Cundiffs for defendant WADY, irrespective of whether some earlier victim investors had not been repaid for many months, and in some cases more than one year, past the purported concert or tour date.

9.     When the *Ponzi* scheme was discovered and collapsed in 2007, approximately 140 victim investors still had not been repaid their outstanding "investment" loans of approximately 25 million dollars ($25,000,000.00).

10.    Between on or about January 2004, through on or about March 2007, defendant WADY used no less than three million dollars ($3,000,000.00) of victim investor funds to pay for his lavish lifestyle. During this period, defendant WADY purchased for himself and others, at least 30 vehicles, including a Lamborghini, Ferrari, and Bentley. Defendant WADY also purchased a $175,000 luxury boat and $800,000.00 in real estate. All of these purchases were paid from funds he obtained from victim investors.

**COUNTS ONE THROUGH TWENTY**
**Wire Fraud**
**[18 U.S.C. § 1343]**

11.    The factual allegations in Paragraphs 1-10 of the Indictment are incorporated by reference and re-alleged as though fully set forth herein.

12.    Beginning at a time unknown to the Grand Jury, but by at least as early as on or about January 2004, and continuing to a date unknown to the Grand Jury, but through at least on or about March 2007, in the District of Arizona and elsewhere, defendant MIKO DION WADY, and others known and unknown to the Grand Jury, using the entities described above and others, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

13.    On or about the dates listed below, each date constituting a separate count, in the District of Arizona and elsewhere, for the purpose of executing said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, defendant MIKO DION WADY, and others known and

4

unknown to the Grand Jury, did knowingly cause funds from investors to be transmitted into the TransCapital bank account held in Arizona at JPMorgan Chase Bank, formerly known as Bank One, Arizona N.A., by means of wire, radio and television communications in interstate commerce, each such instance being a separate Count of this Indictment, as follows:

| Count | Wire Date | Amount Wired | Investor Initials and City/State | Sending Financial Institution and City/State |
|---|---|---|---|---|
| 1 | 10/6/2005 | $55,000 | MH, Inc.<br>Manteca, CA | Bank of the West<br>Walnut Creek, CA |
| 2 | 10/7/2005 | $150,000 | MH, Inc.<br>Manteca, CA | Bank of the West<br>Walnut Creek, CA |
| 3 | 2/8/2006 | $175,000 | DC<br>Pope Valley, CA | The Mechanics Bank<br>Richmond, CA |
| 4 | 2/9/2006 | $125,000 | DC<br>Pope Valley, CA | The Mechanics Bank<br>Richmond, CA |
| 5 | 3/21/2006 | $50,000 | MV<br>Lake Saint Louis, MO | US Bank<br>Minneapolis, MN |
| 6 | 5/4/2006 | $102,340 | MT<br>West Valley, UT | Zions First National Bank<br>Salt Lake City, UT |
| 7 | 5/4/2006 | $77,660 | JT<br>Wauwatosa, WI | Firstar Bank<br>Milwaukee, WI |
| 8 | 6/1/2006 | $50,000 | BB<br>Fountain Hills, AZ | Bank of America<br>New York, NY |
| 9 | 6/1/2006 | $108,476 | SSA<br>Paradise Valley, AZ | Home National Bank<br>Ponca City, OK |
| 10 | 6/9/2006 | $50,000 | AD<br>Stockton, CA | Washington Mutual Bank<br>Stockton, CA |
| 11 | 6/9/2006 | $150,000 | MM<br>Scottsdale, AZ | Wells Fargo<br>San Francisco, CA |
| 12 | 6/21/2006 | $100,000 | JT<br>Wauwatosa, WI | Mountain America F.C.U.<br>Salt Lake City, UT |
| 13 | 6/26/2006 | $125,000 | DC<br>Pope Valley, CA | The Mechanics Bank<br>Richmond, CA |
| 14 | 7/3/2006 | $850,000 | SSA<br>Paradise Valley, AZ | Home National Bank<br>Ponca City, OK |
| 15 | 7/27/2006 | $500,000 | SSA<br>Paradise Valley, AZ | Home National Bank<br>Ponca City, OK |
| 16 | 7/28/2006 | $100,000 | FW<br>Lake St. Louis, MO | First Bank & Trust<br>St. Louis, MO |

5

| Count | Wire Date | Amount Wired | Investor Initials and City/State | Sending Financial Institution and City/State |
|---|---|---|---|---|
| 17 | 8/9/2006 | $55,000 | JD Stockton, CA | Bank of the West Walnut Creek, CA |
| 18 | 8/15/2006 | $150,000 | G & P L, LLC Alpine, UT | Bank of American Fork American Fork, UT |
| 19 | 8/21/2006 | $50,000 | BB Fountain Hills, AZ | Bank of America New York, NY |
| 20 | 8/21/2006 | $100,000 | FW Lake St. Louis, MO | First Bank & Trust St. Louis, MO |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS TWENTY-ONE THROUGH THIRTY-SEVEN**
**Transactional Money Laundering**
**[18 U.S.C. § 1957(a)]**

14.   The factual allegations in Paragraphs 1-13 of the Indictment are incorporated by reference and re-alleged as though fully set forth herein.

15.   Beginning at a time unknown to the Grand Jury, but at least as early as on or about August 2004, and continuing to a date unknown to the Grand Jury, but through at least on or about March 2007, in the District of Arizona and elsewhere, defendant MIKO DION WADY, and others known and unknown to the Grand Jury, using various business entities described above, knowingly engaged in monetary transactions as set forth below, in criminally-derived property of a value greater than $10,000.00, which was derived from specified unlawful activities, namely violations of 18 U.S.C. § 1343 (Wire Fraud), as alleged in Counts 1-20 of this Indictment, each such instance being a separate Count of this Indictment, as follows:

| Ct | Date of Transaction (Financial Inst. Account No.) [Amount, Wired or Withdrawn] | Description of Payment |
|---|---|---|
| 21 | 2/8/2006 (Bank of America Account No. 3843) [$395,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat Entertainment, Inc. |
| 22 | 5/4/2006 (Bank of America Account No. 6244) [$290,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |

| Ct | Date of Transaction (Financial Inst. Account No.) [Amount, Wired or Withdrawn] | Description of Payment |
|---|---|---|
| 23 | 6/21/2006 (Bank of America Account No. 6244) [$250,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 24 | 7/3/2006 (Bank of America Account No. 6244) [$300,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 25 | 7/3/2006 (Bank of America Account No. 6244) [$300,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 26 | 7/3/2006 (Bank of America Account No. 6244) [$300,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 27 | 7/3/2006 (Bank of America Account No. 6244) [$150,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 28 | 7/27/2006 (Bank of America Account No. 6244) [$655,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 29 | 7/28/2006 (Bank of America Account No. 6244) [$375,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 30 | 8/15/2006 (Bank of America Account No. 6244) [$150,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 31 | 8/21/2006 (Bank of America Account No. 6244) [$150,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 32 | 12/8/2005 (Bank of America Account No. 3843) [$ 611,112.84, Wired Out] | To The Talon Group towards the purchase of property in Payson, Arizona, for $800,000.00. |
| 33 | 6/5/2006 (Bank of America Account No. 6244) [$69,063.37, Withdrawal of Funds] | Purchase of a cashier's check payable to "Earnhart" RV for a 2006 Mandalay Trailer, total purchase price $282,063.37. |
| 34 | 6/21/2006 (Bank of America Account No. 6244) [$87,776.73, Withdrawal of Funds] | Purchase of a cashier's check payable to "Earnheart" Ford for a 2007 Ford F650 truck, total purchase price $90,766.73. |
| 35 | 7/18/2006 (Bank of America Account No. 6244) [$237,768.16, Withdrawal of Funds] | Purchase of a cashier's check payable to Motor Sports of Scottsdale for a 2006 Lamborghini Gallardo Spyder, total purchase price $257,768.16. |

7

| Ct | Date of Transaction<br>(Financial Inst. Account No.)<br>[Amount, Wired or Withdrawn] | Description of Payment |
|---|---|---|
| 36 | 7/28/2006<br>(Bank of America Account No. 6244)<br>[$223,000.00, Wire Out] | To The Talon Group towards the purchase of property in Gilbert, Arizona, for $735,000.00. |
| 37 | 8/30/2006<br>(Bank of America Account No. 6244)<br>[$96,490.80, Withdrawal of Funds] | Purchase of a cashier's check payable to Scottsdale Ferrari for a 2006 Bentley Continental, total sales price $168,700.00. |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## **FORFEITURE**

16. The factual allegations in Paragraphs 1 through 15 of the Indictment are incorporated by reference and re-alleged as if fully set forth herein.

17. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and as a result of committing one or more of the offenses charged in Counts 1-20 of this Indictment, defendant MIKO DION WADY shall forfeit to the United States, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to the aggregate sum of $50,000,000 in U.S. currency, in that the aggregate sum is the proceeds of the specified unlawful acts, as defined in 18 U.S.C. § 1956(c)(7)(A) and § 1961(1), to wit: 18 U.S.C. § 1343 (Wire Fraud), which shall include the below described real or personal property used or intended to be used to commit, facilitate, or promote the commission of such offenses; and constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of the offenses:

    a.    Bank of America Account No. 4374162117

    b.    Bank of America Account No. 004375398977

    c.    Edward Jones Account No. 808-10018-1-3

    d.    Settlement Funds in Ponderosa Golf Membership Account No. P080B

    e.    $4,179.00 in U.S. Currency

    f.    Sports Memorabilia

8

g.    One (1) 2003 Ferrari, VIN ZFFYU51A230130752

h.    One (1) 2007 41 Foot Rinker 400EC Boat, Serial No. RNK82500F607

i.    One (1) Four Winns 180 Horizon Ski Boat

j.    One (1) 2000 Four Winns Boat Trailer

k.    One (1) 2007 Weekend Warrior 5th Wheel Trailer, VIN 5HRSS39337C016723

l.    One (1) Extreme Megalite Trailer, VIN 5XT21BT2972101351

m.    One (1) 2005 Ziema Flatbed Trailer

n.    One (1) 2007 Mercedes-Benz S55, VIN WDDNG71X57A094778

o.    One (1) 2007 Ford Expedition, VIN 1FMFK20557LA95137

p.    One (1) 2005 Ford Explorer, VIN 1FMZU63K45UB666688

q.    One (1) 2005 Mercury Grand Marquis, VIN 2MEHM75W65X629864

r.    One (1) Pink Sand Car, No. 10551

s.    One (1) 2006 Polaris Outlaw, VIN 4XAGP50A462059427

t.    One (1) 2006 Polaris ATV, VIN RF3KA09C06T042466

u.    One (1) 2006 Yamaha YXR, VIN 5Y4AM08Y16A008220

v.    One (1) 2006 Polaris ATV, VIN RF3KA09C26T056188

w.    One (1) 2006 Polaris Predator 90, VIN RF3KA09C67T003057

x.    One (1) 2007 Yamaha TTR 50, VIN LBPCA01Y070024280

y.    One (1) 2007 Suzuki ATV, VIN JSAAK47A272105913

z.    One (1) Ladies' 18 Karat White Gold Wide Ring Containing a Heart Shaped Diamond

aa.    One (1) Ladies' 18 Karat White Gold Ring with Letters "LOVE" pa ve' Set

bb.    One (1) Ladies' Platinum Ring Containing Two Rows of Twenty-Two Diamonds

cc.    One (1) Ladies' 18 Karat White Gold Wide Ring with Heart Shaped Ruby

dd.    One (1) Benny & Co. Gents Stainless Steel Watch with Stainless Steel Band

9

| | | |
|---|---|---|
| ee. | One (1) Ladies' 14 Karat White Gold, 7.00 Karats Total Weight, Diamond Necklace |
| ff. | One (1) Ladies' 14 Karat White Gold Flexible Link Diamond Eternal Ring |
| gg. | One (1) Chanel Ladies' Black Steel Watch with Double Row of Diamonds |
| hh. | One (1) Yellow Stoned Ring |
| ii. | One (1) Remington, Model 1100, Shotgun, Serial No. R218988V |
| jj. | One (1) Heckler & Koch, Model P2000 SK, Semi-Automatic Pistol, Serial No. 122-001 238 |
| kk. | One (1) Benelli, Model M4, 12 Gauge Shotgun, Serial No. Y0122120 |
| ll. | One (1) Glock, Model 36, Semi-Automatic Pistol, Serial No. GDL039 |
| mm. | One (1) Keltec CNC Industries, Model P-32, .32 Caliber, Semi-Automatic Pistol, Serial No. C2B63 |
| nn. | One (1) FN Herstal, Model 57, 5.7 x 28 mm, Semi-Automatic Pistol, Serial No. 386113091 |
| oo. | One (1) Glock, Model 19, Semi-Automatic Pistol, Serial No. KTR479 |
| pp. | One (1) Smith and Wesson, .357 Caliber, Handgun, Serial No. CJS5412 |
| qq. | One (1) Glock, Model 36, .45 Caliber, Semi-Automatic Pistol, Serial No. GDL210 |
| rr. | One (1) Glock, Model 37, .45 Caliber, Semi-Automatic Pistol, Serial No. FNX313 |
| ss. | Ammunition and Firearms Magazines |

18. Pursuant to Title 18, United States Code, Section 982, as a result of committing one or more of the Money Laundering (18 U.S.C. § 1957(a)) offenses, in Counts 21 through 38, the Court shall order that the defendant so convicted forfeit to the United States, any property, real or personal, involved in such offense, or any property traceable to such property, including the property enumerated above in Paragraph 17.

19. Pursuant to Title 21, United, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant shall forfeit substitute property, up to the value of the amount described above, if by any act or omission of the defendant, the

10

property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Sections 982(a)(1)(8) and (b), and 1343, and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL


_____/S/_____
FOREPERSON OF THE GRAND JURY
Date: December 1, 2009


DENNIS K. BURKE
United States Attorney
District of Arizona


_____/S/_____
Peter Sexton
Assistant U.S. Attorney


_____/S/_____
Frederick A. Battista
Assistant U.S. Attorney

11