FILED _____ X LODGED
RECEIVED _____ COPY

FEB 22 2011

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

DENNIS K. BURKE
United States Attorney
District of Arizona

PETER SEXTON
Arizona State Bar No. 11089
Assistant U.S. Attorney
peter.sexton@usdoj.gov

FREDERICK A. BATTISTA
Maryland State Bar Member
Assistant U.S. Attorney
fred.battista@usdoj.gov

Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | CR-09-1485-PHX-JAT |
| v. | **PLEA AGREEMENT** |
| Miko Dion Wady, | **(Felony Offenses)** |
| Defendant. | **(Cooperation Required)** |

Plaintiff, United States of America, and the defendant, MIKO DION WADY, with the advice and consent of defense counsel, hereby agree to dispose of this matter on the following terms and conditions:

## 1.   PLEA

The defendant will plead guilty to Counts 2, 3, 14, 15 and 18 of the Indictment, which each charge defendant with a violation of Title 18, United States Code (U.S.C.), Sections 1343 and 2, Wire Fraud, Class C felony offenses; and Counts 24, 26, 28, 29 and 32 of the indictment, which each charge defendant with a violation of 18 U.S.C. §§ 1957(a) and 2, Transactional Money Laundering, Class C felony offenses.

2.   **MAXIMUM PENALTIES**

a.     Each violation of 18 U.S.C. §§ 1343 and 2, is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(d), a maximum term of imprisonment of twenty (20) years, a maximum period of supervised release of three (3) years, or all three combined. If probation is imposed, the maximum term of probation is five (5) years.

b.     Each violation of 18 U.S.C. §§ 1957(a) and 2, is punishable by a maximum fine of $250,000.00, or twice the amount of the criminally derived property involved in the transaction, Title 18, United States Code, Section 1957(b)(2), whichever sum is greater, a maximum term of imprisonment of ten (10) years, a maximum period of supervised release of three (3) years, or all three combined. If probation is imposed, the maximum term of probation is five (5) years.

c.     Because defendant is pleading guilty to multiple counts, defendant faces a maximum statutory fine of up to $2,500,000.00, or twice the gross pecuniary gain derived by defendant from the wire fraud offenses, or twice the pecuniary loss suffered by another person because of the wire fraud offenses, or twice the amount of the criminally derived property involved in the money laundering transactions, whichever sum, or combination of sums, is greater, a maximum statutory term of imprisonment of up to one hundred and fifty years (150) years, a period of supervised release of three (3) years, or all three combined. Defendant understands that while these are the maximum penalties provided for by law, the Court, prior to sentencing, will consult the advisory Sentencing Guidelines, which generally recommend lesser penalties.

d.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

2

1           (2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine

2 is not appropriate;

3           (3)     serve a term of supervised release when required by statute or when a

4 sentence of imprisonment of more than one year is imposed (with the understanding that the

5 Court may impose a term of supervised release in all other cases); and

6           (4)     pay upon conviction a special assessment of $100.00 for each felony count

7 to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A); thereby resulting

8 in a total special assessment in this case of $1,000.00.

9           (5)     The Court is required to consider the Sentencing Guidelines in determining

10 the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is

11 free to exercise its discretion to impose any reasonable sentence up to the maximum set by

12 statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court

13 accepts.

14

15 **3. Cooperation Required**

16     a.     If requested by the United States, the defendant shall meet with representatives of

17 the United States at any reasonable time and place and, in such meetings, shall: (I) waive the

18 Fifth Amendment privilege against self-incrimination; (ii) answer all questions asked about any

19 topic whatsoever; and (iii) provide full and complete information about the topics discussed in

20 each interview, if necessary, by volunteering information about which no questions are asked.

21     b.     If requested by the United States, the defendant shall deliver to the United States

22 any documents and other items to which the defendant has access.

23     c.     If requested by the United States, the defendant shall testify at any time and place

24 and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

25     d.     All information, evidence, and testimony provided by the defendant pursuant to

26 this Agreement, on any topic whatsoever, shall be truthful, honest, candid, and complete with

27 no knowing and material omissions or false statements. The defendant shall not attempt to either

28 protect or falsely implicate any person or entity through false information or omission.

1    e.    Without the prior consent of the United States Attorney's Office for the District

2  of Arizona, the defendant shall not disclose or reveal to any third party the fact that the

3  defendant is cooperating, or the nature of any information that has been obtained by the United

4  States. The defendant shall notify the United States as soon as possible of any such disclosures.

5    f.    The defendant shall notify the United States as soon as possible of any interactions

6  or contacts with any subject or target of any ongoing criminal investigation, any criminal

7  defendant, or their respective counsel or associates.

8    g.    The defendant shall not violate any local, state, federal or foreign laws. The defen-

9  dant shall comply with all terms and conditions of the defendant's pre-trial release.

10    h.    Self-incriminating information provided by the defendant during cooperation

11  involving criminal activity for which the defendant has not been or will not be charged pursuant

12  to this agreement will not be used against the defendant and in particular will not be used in

13  determining defendant's advisory guidelines range pursuant to Section 1B1.8 of the Sentencing

14  Guidelines.

15    i.    Nothing shall limit the United States' methods of verifying the truthfulness of

16  defendant's statements. The United States may confirm the accuracy of any information which

17  defendant provides under the terms of this agreement by use of any investigative means which

18  it deems appropriate and necessary. Whether there has been a complete, truthful and candid

19  disclosure by the defendant will be evaluated and decided by the United States Attorney for the

20  District of Arizona and by that person alone.

21    j.    The plea of guilty shall be entered as soon as practicable.

22    k.    At the conclusion of defendant's cooperation, pursuant to this Plea Agreement, the

23  United States may, at the time of sentencing, move pursuant to Title 18, United States Code,

24  Section 3553(e), Title 28, United States Code, Section 994(n), and advisory Sentencing

25  Guidelines Section 5K1.1, that the Court depart from the advisory Guidelines to reflect any

26  substantial assistance the defendant may give during this investigation and prosecution. If a non-

27  binding recommendation is made, it will be made according to Sentencing Guidelines Section

28  5K1.1. Defendant understands that while the court may take the defendant's cooperation into

4

1 | account in determining the sentence to be imposed, the Court has complete discretion to impose

2 | a sentence within the statutory maximum penalty for the defendant's offenses of conviction.

3

4 | **4.      NON-BINDING RECOMMENDATIONS REGARDING SENTENCING**

5 |      a.      Cooperation.  As set forth above, the United States will assess defendant's

6 | cooperation and make a good faith determination whether the cooperation qualifies as substantial

7 | assistance pursuant to pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. §

8 | 3553(e), respectively.  Even if the cooperation does not meet the requisite legal standards by law,

9 | the United States will bring to the Court's attention at sentencing the nature and scope of the

10 | cooperation provided to the government by the defendant.

11 |      b.      Non-Binding Estimate of Applicable Sentencing Guidelines.  The parties **estimate**

12 | that the following Sentencing Guidelines will apply in this case:

13 |         I.      U.S.S.G. § 2B1.1(a)(1) - Base Offense Level **7** - Wire Fraud.

14 |         II.      U.S.S.G. § 2B1.1(b)(1)(K) - Loss Amount **+20** - Loss of over $7,000,000.00

15 |                 - Estimated loss/restitution over $19,000,000.00.

16 |         III.      U.S.S.G. § 2B1.1(b)(2)(B) - Number of Victims **+4** - More than 50 and less

17 |                 than 250 victims - Estimated number of victims approximately 138.

18 |         IV.      U.S.S.G. § 2B1.1(b)(9)(C) - Sophisticated Means **+2**.

19 |         V.      U.S.S.G. § 2S1.1(b)(2)(A) - Transactional Money Laundering **+1**.

20 |         VI.      U.S.S.G. § 3E1.1(b) - Acceptance of Responsibility **-3**.

21 |         VII.     Total Adjusted Offense Level **31**.

22 |         VIII.    Criminal History Category **I**.

23 |         IX.      Estimated advisory Sentencing Guideline Range - 108 to 135 months.

24 | The United States agrees to recommend that the number of victims and the amount of

25 | loss/restitution should be limited to those victims and monetary sums associated with actual net

26 | loss at the time the *Ponzi* scheme was discovered and discontinued.  While the full scope of the

27 | fraud encompassed more than 250 victims and approximately $50 million in funds, because

28 | many victims were repaid and never incurred an actual loss, the United States will recommend

1  that the Court factor in the repayment circumstances in its determination of the number of

2  victims and the scope of the loss, despite the Commentary in 3(F)(iv) in Section 2B1.1 of the

3  Sentencing Guidelines. With that in mind, the approximate number of victims is approximately

4  138, and the net loss/restitution is approximately $19 million. The defendant acknowledges that

5  the Court and Probation may disagree with these recommendations, and determine that the

6  number of victims and the amount of loss/restitution are the higher amounts indicated above.

7  If those amounts are used, the defendant's advisory Guidelines range will increase accordingly.

8       c.     Sentencing Recommendation. The United States will make a non-binding

9  recommendation that the defendant be sentenced to a term of imprisonment of no greater than

10 the mid-point of the applicable Sentencing Guidelines range as determined by the Court at the

11 time of sentencing.

12      d.     Acceptance of Responsibility. If the defendant makes full and complete disclosure

13 to the U.S. Probation Office of the circumstances surrounding the defendant's commission of

14 the offense, and if the defendant demonstrates an acceptance of responsibility for this offense

15 up to and including the time of sentencing, the United States will recommend a two-level

16 reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a).

17 If the defendant has an offense level of 16 or more, the United States will recommend an

18 additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to

19 U.S.S.G. § 3E1.1(b).

20      e.     Non-Binding Nature of Recommendations. Defendant understands that the United

21 States' recommendations are not binding on the Court.

22      f.     Candor to Court. The United retains the unrestricted right to make any and all

23 statements it deems appropriate to the Probation Office and to make factual and legal responses

24 to any statements made by the defendant or defense counsel or objection to the presentence

25 report or to question by the court at the time of sentencing.

26

27

28

6

**5.   STIPULATIONS REGARDING SENTENCING.**

a.   _Restitution_.  Pursuant to 18 U.S.C. §§ 3663 and 3663A, the defendant specifically agrees to make restitution to the known victims of the subject scheme to defraud in the amount of no less than $19,000,000.00, the exact amount to be determined by the Court at the time of sentencing.  The restitution order shall include restitution for dismissed counts and uncharged conduct.

b.   _Sentencing Cap_.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate and agree that the defendant shall be sentenced to a term of imprisonment of no greater than the high-end of the applicable Sentencing Guideline range determined by the Court at the time of sentencing, i.e., no upward departures.

c.   _Community Service_.  Defendant shall be ordered to perform 250 hours of community service in lieu of a fine while under the Court's supervision.

d.   _Assets._  The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest.  The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures).

**6.   AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.   Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall move to dismiss the remaining 27 counts of the Indictment after defendant has been sentenced on the 10 counts of the Indictment agreed to herein.

b.   The United States Attorney's Office for the District of Arizona shall not prosecute defendant for any offenses committed by the defendant, and known by the United States, in connection with conduct related to the conduct set forth in the Indictment, set forth in the factual basis of this agreement, and contained in the case discovery as of the date of this agreement.

c.   This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

7

7.  **BREACH OF THE PLEA AGREEMENT**

      a.     If defendant fails to comply with any of his obligations or promises set forth in this Plea Agreement, the United States may:

            i.     in its sole and absolute discretion, declare any provision of this Plea Agreement, without giving defendant any right or option to withdraw from the Plea Agreement or his the plea of guilty;

            ii.     recommend any sentence, up to and including the statutory maximum sentence;

            iii.     prosecute defendant, or reinstitute prosecution of defendant, for any and all crimes committed by defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

            iv.     use in any manner, and in any proceeding, any evidence provided by the defendant before or after execution of this Agreement; and

            v.     advise the Bureau of Prisons that the defendant is no longer a cooperating witness, and recommend redesignation of the defendant to a higher custodial level.

      b.     The United States Attorney's Office for the District of Arizona shall determine whether the information, evidence, and testimony provided by defendant pursuant to this Agreement has been truthful, honest, candid, and complete.  The determination of the United States Attorney's Office for the District of Arizona shall be final unless the Court finds by a preponderance of evidence that the determination was unreasonable or reached in bad faith.

8.  **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

      If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

      If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have

1  been dismissed because of this plea agreement shall automatically be reinstated. In such event,

2  the defendant waives any and all objections, motions, and defenses based upon the Statute of

3  Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or

4  proceedings. The defendant understands that any statements made at the time of the defendant's

5  change of plea or sentencing may be used against the defendant in any subsequent hearing, trial,

6  or proceeding subject to the limitations of Fed. R. Evid. 410.

7

8  **9.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

9            Providing the defendant's sentence is consistent with this agreement, the defendant

10  waives (1) any and all motions, defenses, probable cause determinations, and objections that the

11  defendant could assert to the indictment or information; and (2) any right to file an appeal, any

12  collateral attack, and any other writ or motion that challenges the conviction, an order of

13  restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the

14  defendant's sentence, including the manner in which the sentence is determined, including but

15  not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and

16  2255. The defendant acknowledges that if the Court has sentenced the defendant according to

17  the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral

18  attack, or other motion the defendant might file challenging the conviction, order of restitution

19  or forfeiture, or sentence in this case.

20

21  **10.    DISCLOSURE OF INFORMATION**

22            a.      The United States retains the unrestricted right to provide information and make

23  any and all statements it deems appropriate to the U.S. Probation Office and to the Court in

24  connection with the case.

25            b.      Any information, statements, documents, and evidence that the defendant provides

26  to the United States pursuant to this agreement may be used against the defendant at any time.

27

28

c.    The defendant shall cooperate fully with the U.S. Probation Office.   Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

      i.    criminal convictions, history of drug abuse, and mental illness; and

      ii.    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 11.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 12.    ELEMENTS OF THE OFFENSES

Defendant understands that the essential elements of **Wire Fraud,** in violation of 18 U.S.C. § 1343, are as follows with respect to each individual count:

First, during the period set forth in the Indictment, defendant made up a scheme or plan for obtaining money or property by making false promises or statements;

Second, defendant knew that the promises or statements were false;

Third, the promises or statements were material, that is they would and actually did reasonably influence a person to part with money or property;

Fourth, defendant acted with the intent to defraud; and

Fifth, defendant used, or caused to be used, a wire transfer as alleged in each count to carry out or attempt to carry out an essential part of his *Ponzi* scheme.

1      Defendant further understands that the essential elements of **Transactional Money**

2 **Laundering**, in violation of Title 18, United States Code, Section 1957(a), are as follows with

3 respect to each individual count:

4      First, during the time frame set forth in the Indictment, defendant engaged or attempted

5 to engage in monetary transactions;

6      Second, in property derived from violations of 18 U.S.C. § 1343 (Wire Fraud);

7      Third, defendant knew that the property was derived from that crime; and,

8      Fourth, the property had a value of more than $10,000.00 per transaction.

9

10 **13.**   **FACTUAL BASIS**

11      The defendant admits that the following facts are true and that if this matter were to

12 proceed to trial the United States could prove the following facts beyond a reasonable doubt:

13

14                          **INTRODUCTION**

15 At all times material to this matter:

16      1.    Defendant MIKO DION WADY ("WADY") resided in Chandler, Arizona.

17 Defendant WADY operated and had an ownership interest in various business enterprises that

18 purportedly were engaged in the business of promoting concerts or tours of well known

19 entertainers and artists. The enterprises included Dezert Heat Entertainment, Inc.; Dezert Heat,

20 Inc.; Dezert Heat Worldwide, LLC; NATO Enterprises, LLC; and NATO Entertainment, LLC.

21      2.    Defendant WADY, and others, misled victim investors into believing that WADY

22 entered into performance contracts and other business arrangements with nationally and

23 internationally known entertainers, arranged performance venues throughout the world, and

24 greatly profited by putting on these concert or tour events. Defendant WADY, with the

25 assistance of others, falsely claimed during the period 2004 through 2007 to have promoted

26 concerts for The Rolling Stones, U2, Barbara Streisand, Faith Hill, Tim McGraw, Mariah Carey,

27 George Strait, Billy Joel, Jamie Foxx, Jimmy Buffet, Mary J. Blige, Pearl Jam, and at least thirty

28 (30) other well known artists and entertainers. In reality, during this period, defendant WADY

1  actually promoted far fewer concerts, all involving only local or substantially less well known

2  artists.

3      3.    TransCapital, LLC ("TransCapital"), an Arizona Limited Liability Company located

4  in Mesa, Arizona, was operated by James Cundiff and his two sons, Adam and Jeremiah Cundiff

5  ("Cundiffs").  TransCapital was established solely to secure "investment" financing for the

6  concerts and tours purportedly being promoted by defendant WADY.

7      4.    Dezert Heat Worldwide, LLC ("Worldwide") was a joint venture among the

8  Cundiffs and defendant WADY, and was operating by on or about September 2006 to eventually

9  replace TransCapital. Worldwide operated in the same basic manner as TransCapital, which was

10 to obtain victim investor funds to finance purported concerts and tours supposedly being

11 promoted by defendant WADY.

12

13                              **FRAUD SCHEME**

14      5.    From at least on or about August 2004, through on or about March 2007, the

15 Cundiffs, through TransCapital or Worldwide, entered into loan and event funding agreements

16 with victim investors (approximately 250) for millions of dollars

17 (approximately$50,000,000.00) to purportedly finance around 150 concerts or concert tours

18 supposedly being promoted by defendant WADY.  Approximately 138 of the investors are

19 currently known to have sustained losses totaling around $19,000,000.00 as of the date of this

20 agreement. The "investment" loan agreements victim investors entered into with the Cundiffs,

21 through TransCapital or Worldwide, regularly specified that each "investment" loan was for the

22 financing of a particular concert or tour of a designated performer. The "investment" loan terms

23 regularly called for repayment to the victim investors within 30 days after receipt by

24 TransCapital of the net concert proceeds for the designated concert or tour.  Victim investors

25 were typically promised interest rates of 4% per month for the first two months, and 2.5% per

26 month thereafter until the investment loans were repaid.  The "investment" event funding and

27 subscription agreements that victim investors entered into with the Cundiffs, through

28 Worldwide, specified that each "investment" was for the promotion of events at the discretion

1  of Worldwide.  The "investment" event funding terms called for payment of interest to the

2  victim investors within 30 days after receipt by Worldwide of the net concert proceeds for the

3  promoted event.  Victim investors were typically promised interest rates of 4% per month for

4  a maximum of 6 months or 24% for one promoted event.

5      6.    The Cundiffs, through TransCapital or Worldwide, upon receipt of victim investor

6  funds, transferred the funds to defendant WADY for the purported financing of concert or tour

7  events.  Because defendant WADY had no association or contractual arrangement with any of

8  the concerts or tours, the investor funds given to defendant WADY from the Cundiffs were never

9  actually used as represented to the victim investors.  Most of the funds were instead returned by

10  defendant WADY to the Cundiffs within a short period of time, typically one or two days, under

11  the guise that these repayments represented the net proceeds from some other concert or tour that

12  was recently completed.  In essence, because no actual investments were used for the represented

13  concerts or tours, new victim investor monies were simply used to repay old victim investors.

14  From beginning to end, this was primarily a *Ponzi* scheme.

15      7.    From these purported net concert proceeds, which were in reality new funds recently

16  obtained from another victim investor pool for another purported concert or tour, the Cundiffs

17  determined which previous victim investors should be repaid their original investment, with

18  interest.  Generally, the Cundiffs favored those victim investors who were most likely to re-

19  invest their purported earnings in another fictitious concert or tour arrangement.  In many cases,

20  as the *Ponzi* funds were being shifted between bank accounts, the Cundiffs and defendant

21  WADY took the fictional concert proceeds for themselves prior to repaying all of the victim

22  investors for a particular concert or tour, contrary to the terms of the agreements with victim

23  investors.

24      8.    Throughout the later part of 2006 and into 2007, new victim investor funds were

25  solicited by the Cundiffs for defendant WADY, irrespective of whether some earlier victim

26  investors had not been repaid for many months, and in some cases more than one year, past the

27  purported concert or tour date.

28

13

9.     When the *Ponzi* scheme was discovered and collapsed in 2007, approximately 138 victim investors still had not been repaid their outstanding "investment" loans of approximately 19 million dollars ($19,000,000.00).

10.    Between on or about January 2004, through on or about March 2007, defendant WADY used no less than three million dollars ($3,000,000.00) of victim investor funds to pay for his lavish lifestyle.  During this period, defendant WADY purchased for himself and others, at least 30 vehicles, including a Lamborghini, Ferrari, and Bentley.  Defendant WADY also purchased a $175,000 luxury boat and $800,000.00 in real estate.  All of these purchases were paid from funds he obtained from victim investors.

## WIRE FRAUD

11.    Beginning by on or about January 2004, and continuing through on or about March 2007, in the District of Arizona and elsewhere, defendant WADY, and others, using the entities described above and others, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

12.    On or about the dates listed below, each date constituting a separate count, in the District of Arizona and elsewhere, for the purpose of executing said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, defendant WADY, and others, did knowingly cause funds from victim investors to be transmitted into the TransCapital bank account held in Arizona at JPMorgan Chase Bank, formerly known as Bank One, Arizona N.A., by means of wire, radio and television communications in interstate commerce, each such instance being a separate Count, as follows:

| Count | Wire Date | Amount Wired | Investor Initials and City/State | Sending Financial Institution and City/State |
|-------|-----------|--------------|----------------------------------|----------------------------------------------|
| 2 | 10/7/2005 | $150,000 | MH, Inc. Manteca, CA | Bank of the West Walnut Creek, CA |

| Count | Wire Date | Amount Wired | Investor Initials and City/State | Sending Financial Institution and City/State |
|---|---|---|---|---|
| 3 | 2/8/2006 | $175,000 | DC Pope Valley, CA | The Mechanics Bank Richmond, CA |
| 14 | 7/3/2006 | $850,000 | SSA Paradise Valley, AZ | Home National Bank Ponca City, OK |
| 15 | 7/27/2006 | $500,000 | SSA Paradise Valley, AZ | Home National Bank Ponca City, OK |
| 18 | 8/15/2006 | $150,000 | G & P L, LLC Alpine, UT | Bank of American Fork American Fork, UT |

In violation of Title 18, United States Code, Sections 1343 and 2.

**TRANSACTIONAL MONEY LAUNDERING**

13.   Beginning by on or about August 2004, and continuing through on or about March 2007, in the District of Arizona and elsewhere, defendant WADY, and others, using various business entities described above, knowingly engaged in monetary transactions as set forth below, in criminally-derived property of a value greater than $10,000.00, which was derived from specified unlawful activities, namely violations of 18 U.S.C. § 1343 (Wire Fraud):

| Ct | Date of Transaction (Financial Inst. Account No.) [Amount, Wired or Withdrawn] | Description of Payment |
|---|---|---|
| 24 | 7/3/2006 (Bank of America Account No. 6244) [$300,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 26 | 7/3/2006 (Bank of America Account No. 6244) [$300,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 28 | 7/27/2006 (Bank of America Account No. 6244) [$655,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |

15

| Ct | Date of Transaction (Financial Inst. Account No.) [Amount, Wired or Withdrawn] | Description of Payment |
|---|---|---|
| 29 | 7/28/2006 (Bank of America Account No. 6244) [$375,000.00, Wired In] | Wire transfer of investor funds from TransCapital, JP Morgan Chase Bank Account No. 2833 to Dezert Heat, Inc. |
| 32 | 12/8/2005 (Bank of America Account No. 3843) [$ 611,112.84, Wired Out] | To The Talon Group towards the purchase of property in Payson, Arizona, for $800,000.00. |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## 14.   FORFEITURE OF PARTICULAR ASSETS AND MONEY JUDGEMENT

Defendant consents to the entry of Preliminary Order of Forfeiture for the property listed in the indictment, specifically including the entry of a money judgment in an amount to be determined by the Court at the time of Sentencing and the property specifically named in the indictment, amended with regard to Interlocutory Sales Orders. The net liquidated value of these assets, that is the gross sales price less that costs of sale, storage, and administration of the United States Marshals Service regarding the items listed herein, shall be applied to reduce the money judgment identified in this paragraph. The defendant agrees that this listed property was used or intended to be used to commit, facilitate, or promote the commission of such offenses; and constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of the offenses.

The defendant further understands and agrees that forfeiture of the assets is in accordance with 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); and 18 U.S.C. § 982, in that the aggregate sum is the proceeds of the specified unlawful acts, as defined in 18 U.S.C. § 1956(c)(7)(A) and

§ 1961(1), that is, 18 U.S.C. § 1344 (Wire Fraud). Defendant further agrees that a Final Order of Forfeiture may be issued prior to sentencing if no third party claims are made. Defendant waives the requirements of Federal Rule of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Any figure appearing in this list as the result of the Interlocutory Sale Order is a gross figure not reflecting the costs and expenses of the United States Marshals Service.

a)  $4,090 from the sale of Sports Memorabilia;

b)  $11,650.00 from the sale of One (1) Extreme Megalite Trailer;

c)  $87,574.74 from Bank of America Account No. 4374162117in the name of Adam Cundiff;

d)  One (1) 2003 Ferrari, VIN 2FFYU51A230130130752;

e)  $10,273.34 from Edward Jones Account No. 808-10018-1-3 in the name of Miko Wady;

f)  One (1) 2007 Rinker 400EC Boat;

g)  $8,200 from the sale of One (1) 2005 Ford Explorer;

h)  One (1) 2007 Weekend Warrior 5th Wheel Trailer;

I)  $49,122.44 from Settlement Funds in Ponderosa Golf Membership Account No. P080B in the name of Miko Dion Wady;

j)  One (1) Four Winns 180 Horizon Ski Boat;

k)  One (1) 2000 Four Winns Boat Trailer;

l)  $2,500 from the sale of One (1) 2005 Ziema Flatbed Trailer;

m)  $4,179.00 in U.S. Currency;

n)  One (1) Ladies 18kt White Gold Wide Ring containing Heart Shaped Diamond;

o)  $15,736 from the sale of the following items of jewelry:

1) Ladies 18kt White Gold Ring with letters "LOVE" pa ve' set;

2) Ladies Platinum ring containing two rows of twenty-two diamonds;

3) Ladies 18kt white Gold wide ring with heart shaped ruby;

4) Benny & Co. Gents stainless steel watch with stainless steal band;

17

<div style="padding-left: 2em;">

5) Ladies 14kt white gold 7.00 cts total weight diamond necklace;

6) Ladies 14kt white gold flexible link, diamond eternal ring;

7) Chanel ladies black steal watch with double row of diamonds;

8) Yellow stone ring;

</div>

p)   Remington, Model 1100, shotgun, Serial No. R218988V;

q)   Heckler & Koch, Model P2000 SK, pistol, Serial No. 122-001 238;

r)   Benelli, Model M4, 12 gauge shotgun, Serial No. Y0122120;

s)   Glock, Model 36, pistol, Serial No. GDL039;

t)   Keltec CNC Industries, Model P-32, .32 caliber, semi-automatic pistol, Serial No. C2B63;

u)   FN Herstal, Model 57 X 28mm, semi-automatic pistol, Serial No. 386113091;

v)   Glock, Model 19, semi-automatic pistol, Serial No. KTR479;

w)   Smith & Wesson, .357 caliber, handgun, Serial No. CJS5412;

x)   Glock, Model 36, .45 caliber, semi-automatic pistol, Serial No. GDL210;

y)   Glock, Model 37, .45 caliber, semi-automatic pistol, Serial No. FNX313;

z)   Ammunition and Firearms Magazines.

The following items are included in a Bill of Particulars and are agreed to be included for forfeiture in the Preliminary Order of Forfeiture:

aa)   $18,120.87 from Bank of America Account No. 467 818 9922 in the name of Jeremiah Cundiff;

bb)   $500 obtained from the liquidation of an check from American Family Insurance;

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney.  I understand each of its provisions and I voluntarily agree to it.

I agree to cooperate with the United States on the terms and conditions set forth in this Agreement.  I understand that by entering into this Agreement I will waive my privilege against self-incrimination.

My cooperation is not the result of force, threats, assurances or promises other than the promises contained in this Agreement.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have been advised by my attorney of the nature of my cooperation with the United States, including the substance of the applicable statutes and Sentencing Guidelines provisions, and the consequences of any failure to meet my cooperation obligations. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

I agree that this Agreement contains all the terms and conditions of my plea and cooperation. I further agree that any promises, including any predictions as to the Sentencing

19

Guidelines range or to any Sentencing Guidelines factors that will apply, made by anyone (including my attorney) that are not contained within this Agreement are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

2-22-11
Date

MIKO DION WADY
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

2-22-11
Date

MICHAEL S. RYAN
Attorney for Defendant

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

DENNIS K. BURKE
United States Attorney
District of Arizona

2/22/11
Date

FREDERICK A. BATTISTA
PETER SEXTON
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

Date

JAMES A. TEILBORG
United States District Judge

21